UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| B2GOLD CORP., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 1:18-cv-1202 (TSE/IDD) |
| | ) |
| PHILIP BRYSON CHRISTOPHER *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Default Judgment from B2Gold, Corp.,
and Dale Craig (collectively "Plaintiffs") against Philip Bryson Christopher ("Christopher"),
AURUM S.A., Flor De Mayo S.A., Eduardo Ruben Gonzalez Lopez ("Lopez"), Eduardo Ruben
Gonzalez Guzman ("Guzman"), and Edwin Alfredo Kauffman Blandino ("Kauffman")
(collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Plf. Mot. for
Default J., ECF No. 23. After the Defendants or a licensed attorney for the Defendants failed to
appear at the hearing on February 8, 2019, the undersigned Magistrate Judge took this matter
under advisement to issue this Report and Recommendation. Upon consideration of the
Complaint, Plaintiffs' Motion for Default Judgment, and the memorandum thereto, the
undersigned Magistrate Judge makes the following findings and recommends that default
judgment be entered against Defendants Christopher, Flor de Mayo SA, and Kauffman for Count
II and III, and denied against Defendant Christopher for Count I.

## I.   INTRODUCTION

On September 20, 2018, Plaintiffs filed this action under 28 U.S.C. § 1964 for claims
arising out of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§

1961, *et seq.* Compl. ¶ 10. The Complaint alleges that Defendants conspired and engaged in racketeering activities as defined by § 1961(1)(A)-(B). *Id.* ¶ 151-52, 161-63. The Complaint also alleges a defamation *per se* claim against Defendants Christopher, AURUM SA, Flor de Mayo SA, and Kauffman. *Id.* ¶¶ 167-76.

After Defendants failed to respond to Plaintiffs' Complaint or appear at any proceedings in this matter, Plaintiffs moved for default judgment against Defendants. Plaintiffs seek compensatory and other damages permitted by 18 U.S.C. § 1964(c) in the amount of at least $75,000.00, "threefold the actual damages sustained," compensatory and other damages for its defamation claim in the amount exceeding $75,000.00, punitive damages in the amount of $350,000 or the maximum available by law for its defamation claim, attorney's fees and costs, and injunctive relief. *Id.* ¶ 176(A)-(F). The undersigned Magistrate Judge took the matter under advisement to issue this Report and Recommendation.

## A. Jurisdiction and Venue

For a court to render default judgment over a party, it must have subject matter and personal jurisdiction over the party and be the appropriate venue for the action. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs' conspiracy and racketeering claims arise out of RICO, which is federal law pursuant to 18 U.S.C. § 1962. The Court has supplemental jurisdiction over Plaintiffs' defamation *per se* claim because it forms part of the same case or controversy. *See* 28 U.S.C. § 1367.

Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2)-(3) because the events and actions giving rise to the claims asserted occurred in this judicial district. Compl. ¶ 12. Venue is also appropriate under 18 U.S.C § 1965 because Defendants transacted affairs of the criminal enterprise ("Enterprise") in this judicial district. *Id.*

Turning to personal jurisdiction, this Court has personal jurisdiction over Defendant Christopher. Defendant Christopher is a citizen of the United States and is domiciled in the Commonwealth of Virginia. *Id.* ¶ 5. As to the other Defendants ("Other Defendants"), this Court must assess personal jurisdiction pursuant to FED. R. CIV. P. 4(k)(2) and the conspiracy theory of personal jurisdiction against the standard for a FED. R. CIV. P. 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss).

At the motion to dismiss stage, the plaintiff need only present a *prima facie* showing to support jurisdiction. *See America Online, Inc. v. Huang,* 106 F. Supp. 2d 848, 853 (E.D. Va. 2000). This is a minimal burden, requiring only a finding that the facts as alleged by the plaintiff, if unrebutted, would be sufficient to establish jurisdiction. 2004 U.S. Dist. LEXIS 28690. Although the Court must construe all relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences in favor of jurisdiction, *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), jurisdictional facts alleged by the plaintiff must not be vague or conclusory. *See Clark v. Remark*, 1993 U.S. App. LEXIS 10043, at *7 (4th Cir. April 29, 1993).

**Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)**

In order to obtain personal jurisdiction under Rule 4(k)(2), three requirements must be met. First, the suit must arise under federal law. FED. R. CIV. P. 4(k)(2). Second, the defendant must not be subject to personal jurisdiction in any state. *Id.* Third, the defendant must have contacts with the United States "consistent with the Constitution and laws of the United States." *Id.* The third requirement is founded upon the Due Process Clause of the Fifth Amendment. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). This Clause ensures that a defendant has fair warning before it is subjected to the coercive power of a court. *See Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Thus, although Rule 4(k)(2) is designed to facilitate obtaining jurisdiction over foreign defendants, it does not diminish the requirement that the defendant's contacts with the forum be constitutionally sufficient. *See Saudi*, 427 F.3d at 275. Analyzing the facts set forth to establish personal jurisdiction under FED. R. CIV. P. 4(k)(2) against the standard for a motion to dismiss, the undersigned finds this Court does not have personal jurisdiction over Defendants Flor de Mayo SA, AURUM SA, Lopez, Guzman, or Kauffman.

Plaintiffs argue that this Court has personal jurisdiction over Defendants Flor de Mayo SA, Guzman, Lopez, and Kauffman because they purposefully availed themselves of the laws of the United States by way of email communication. Specifically, Plaintiffs argue that Defendant Flor de Mayo SA purposefully availed itself of the laws of the United States because Defendant Christopher signed emails as President of Flor de Mayo SA. Mem. of Law in Support of their Mot. for Default J. Against All Defs., ECF No. 24 at 6 [hereinafter "Mem."]. Plaintiffs contend that Defendants Guzman and Lopez purposefully availed themselves of the laws of the United States when Defendant Christopher indicated in his emails that "the entire Gonzales family will follow along . . ." and that Plaintiffs threatened or committed RICO violations against Defendants Lopez and Gonzales. *Id.* at 6. Finally, Plaintiffs argue that Defendant Kauffman purposefully availed himself of the laws of the United States because he was copied on threatening and extortionate emails that Defendant Christopher sent, and Defendant Christopher represented to Plaintiffs that they were "dealing" with Defendant Kauffman. *Id.* at 5. Even when construing all allegations supporting jurisdiction in the light most favorable to the Plaintiffs, these facts are insufficient to establish Defendants Flor de Mayo SA, Guzman, Lopez, and Kauffman purposefully availed themselves of the laws of the United States.

With regard to Defendants Flor de Mayo SA and Kauffman, sending emails are not sufficient for purposeful availment. *See Estate of Morris v. Goodwin*, 2015 U.S. Dist. LEXIS 2221, at *14-15 (D. Md. Jan. 8, 2015) (holding that even in viewing the allegations in the light most favorable to plaintiffs, a handful of emails, phone calls, and friend requests on Facebook from an out-of-state defendant, without more, does not rise to the level of purposeful availment for purposes of establishing specific jurisdiction). *See generally Rupert v. Bond*, 68 F.Supp. 3d 1142, 1168 (N.D. Ca. 2014). Communications alone are insufficient to establish jurisdiction. *New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 2019 U.S. Dist. LEXIS 47833, at *17 (E.D. Va. March 21, 2019) (referring to *Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991) (rejecting plaintiff's argument that negotiation of the contract by correspondence, telephone calls and facsimile transmissions to Virginia was sufficient to establish personal jurisdiction). The Court fails to see the nexus between being copied on an email and subjecting oneself to the laws of the United States. Regarding Defendants Lopez and Guzman, a mere representation by another person does not mean that an individual availed itself of the laws and privileges of a country or state. Plaintiffs allegation that the Other Defendants purposely availed themselves of the laws of the United States because of a representation made by Defendant Christopher is unpersuasive. It is a conclusory statement that does not indicate that Defendants Lopez and Guzman had any contact with the United States. These facts are constitutionally insufficient to establish personal jurisdiction.

With regard to Defendant AURUM SA, Plaintiffs argue that it purposefully availed itself of the laws of the United States when: Defendant Christopher wrote extortionate emails in his capacity as a significant shareholder of the company; Defendant AURUM SA purportedly retained counsel in New York to file complaints against Plaintiffs; and Defendant Christopher

told Plaintiffs that they were "dealing with the entire Aurum SA team . . . ." Mem., ECF No. 24 at 5-6. Before evaluating purposeful availment, the undersigned finds that Plaintiffs failed to demonstrate the second requirement of personal jurisdiction under FED. R. CIV. P. 4(k)(2): that the defendant must not be subject to personal jurisdiction in any state.

Plaintiffs represent that Defendant AURUM SA retained counsel in New York in order to file complaints against Plaintiffs. New York would certainly have personal jurisdiction over Defendant AURUM SA because it is engaging in legal and business activities there. *See Gordian Grp., LLC v. Syringa Exploration, Inc.*, 168 F. Supp. 3d 575, 585 (S.D.N.Y. 2016) (referring to *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (holding that an out-of-state defendant who hired a New York attorney was subject to personal jurisdiction in New York)). By subjecting itself to the laws and privileges of New York, the attorney-client protection in particular, the undersigned finds that Defendant AURUM SA is indeed subject to personal jurisdiction in another state. Therefore, on this basis, this Court does not have personal jurisdiction over Defendant AURUM SA under FED. R. CIV. P. 4(k)(2). An evaluation of purposeful availment is, therefore, not necessary.

Accordingly, in evaluating the facts set forth to establish personal jurisdiction under FED. R. CIV. P. 4(k)(2), the undersigned finds that this Court does not have personal jurisdiction over Defendants Flor de Mayo SA, AURUM SA, Guzman, Lopez, or Kauffman.

**Conspiracy Theory of Jurisdiction[1]**

The Supreme Court held that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), however, the Fourth Circuit has recognized that the existence of personal jurisdiction can flow from a conspiracy, *Consulting Eng'r Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009). A co-conspirator is subject to jurisdiction in a forum where substantial acts in furtherance of the conspiracy were performed by any member of the conspiracy, if the co-conspirator knew or should have known that the acts would be performed in the forum state. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002); *Gemini Enters., Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979); *America Online, Inc. v. Ambro Enters.*, 2005 U.S. Dist. LEXIS 46261, at *7 n.1 (E.D. Va. Sept. 8, 2005). In assessing Plaintiffs' claims against the standards of Fed. R. Civ. P. 12(b)(6), and pursuant to the conspiracy theory of personal jurisdiction, the undersigned finds that this Court has personal jurisdiction over Defendants Flor de Mayo SA and Kauffman and does not have personal jurisdiction over Defendants AURUM SA, Lopez, or Guzman.

This Court has personal jurisdiction over Defendant Flor de Mayo SA because of the agency relationship between Defendant Christopher and Defendant Flor de Mayo SA. Defendant Christopher is President of Flor de Mayo SA, and he, therefore, has authority to act on behalf of the company. Compl. ¶ 91. Defendant Christopher signed extortionate emails in his capacity as President of Flor de Mayo SA, from which can be reasonably inferred that Defendant Flor de Mayo SA knew or should have known that Defendant Christopher was engaging in racketeering

---

[1] Plaintiffs did not argue that this Court has personal jurisdiction over Defendants under the conspiracy theory. However, the Court finds a discussion regarding that particular basis for jurisdiction necessary and therefore addresses it *sua sponte. See Weinstein v. Todd Marine Enters, Inc.*, 115 F. Supp. 2d 668, 670-71 (E.D. Va. 2000); *Noble Sec., Inc. v. MIZ Eng'g Ltd.*, 611 F. Supp. 2d 513, 547 (E.D. Va. 2009).

activities in this forum. This inference does not run afoul of the Supreme Court ruling that the unilateral activity of those who claim a relationship with a nonresident cannot satisfy the requirement of contact with the state because there is an agency relationship between these two Defendants. *See Hanson*, 357 U.S. at 253. Thus, this Court has personal jurisdiction over Defendant Flor de Mayo SA under the conspiracy theory of personal jurisdiction. Similarly, this Court also has personal jurisdiction over Defendant Kauffman.

Defendant Kauffman is subject to the jurisdiction of this Court because there are facts indicating that he knew or should have known that Defendant Christopher was engaging in racketeering activities. Defendant Christopher sent extortionate emails to Plaintiffs and, within the same email thread, sent them to Defendant Kauffman. *See* Dec. of Plf. Dale Craig, Exs. 1-5, 8, 11-13 [hereinafter "Dec."]. This demonstrates that Defendant Kauffman was aware of Defendant Christopher's racketeering activities, which is sufficient for personal jurisdiction under the conspiracy theory.

Conversely, Plaintiffs have not demonstrated that Defendants AURUM SA, Lopez, or Guzman are subject to this Court's jurisdiction under the conspiracy theory of personal jurisdiction. Specifically, Plaintiffs have not shown that those Defendants knew or should have known that Defendant Christopher's acts would be performed in this district. Turning to Defendant AURUM SA first, the Complaint alleges that Defendant AURUM SA is a co-conspirator by virtue of the emails that Defendant Christopher sent as a significant shareholder of Aurum S.A. Compl. ¶ 91. However, there is no indication that Defendant Christopher is a controlling shareholder of the Defendant company or that he has the authority to act on behalf of it. Therefore, the undersigned cannot conclude that Defendant AURUM SA knew or should have known of the racketeering activities performed in Virginia.

Similarly, there is an insufficient basis to conclude that Defendants Lopez and Guzman knew or should have know that Defendant Christopher committed racketeering acts in Virginia. Plaintiffs point to one (1) email, which states that "the entire Gonzalez family will follow along thru [sic] us," to support their claim that Defendants Lopez and Guzman knew of the extortion scheme. Mem., ECF No. 24 at 6. This single and unilateral allegation by another co-conspirator does not indicate that Defendants Lopez or Guzman knew or should have known that RICO offenses were being committed. *See Hanson*, 357 U.S. at 253. In fact, Defendants Guzman and Lopez are not even copied on any emails. *See* Decl., Ex. 2. Without anything more, the undersigned cannot find that Defendants Lopez and Guzman knew or should have known that Defendant Christopher engaged in racketeering activities in Virginia. Therefore, this Court does not have personal jurisdiction over them under the conspiracy theory. The remainder of this Report and Recommendation will address whether default judgment should be entered against the remaining Defendants: Christopher, Flor de Mayo SA, and Kauffman ("Remaining Defendants").

### B. Service of Process

Federal Rule of Civil Procedure 4(e) governs service upon an individual and allows service by "delivering a copy of the summons and of the complaint to the individual personally. . . ." FED. R. CIV. P. 4(e). On October 5, 2018, Defendant Christopher was served with the Complaint and Summons at his residence located at Railroad Ave., Crozet, Virginia 22932. Proof of Serv., ECF No. 4. Service on Defendant Christopher was therefore proper.

Defendant Kauffman was served pursuant to FED. R. CIV. P. 4(h) and (f). In that regard, on December 14, 2018, Plaintiffs filed a Motion for an Order Authorizing Service Under Federal Rule of Civil Procedure 4(f)(3). Plfs' Mot. for an Order Authorizing Serv. under FED. R. CIV. P.

4(f)(3), ECF No. 16. The Court granted Plaintiffs' Motion and found that service was effectuated on Defendant Kauffman. Order, ECF No. 18. The Court also ordered that Plaintiffs shall substitute serve Defendant Flor De Mayo S.A. by emailing a copy of the service documents to the President of the company, Defendant Christopher, at popoyo128@gmail.com. *Id.* On December 17, 2018, Defendant Flor De Mayo S.A. was served a copy of the Complaint, Summons, and Civil Cover Sheet via email. Proof of Serv., ECF No. 19. Accordingly, the Court finds that service was proper for Defendants Flor de Mayo SA and Kauffman.

### C. Grounds for Default

Plaintiffs filed their Complaint on September 20, 2018. Compl., ECF No. 1. Defendants failed to file an answer or any responsive pleading in this matter. On January 16, 2019, the Clerk entered default against Defendants upon Plaintiffs' Request for Entry of Default. ECF Nos. 21-22. On January 23, 2018, Plaintiffs filed a Motion for Default Judgment, and the Court held a hearing on the matter on February 8, 2019. Plf. Mot. for Default J., ECF No. 23; Mot. for Default J. Hr'g, ECF No. 26. Defendants failed to appear at the hearing and the matter was taken under advisement.

## II.    FACTUAL FINDINGS

In 2009, after a series of mergers and acquisitions, Plaintiff B2Gold acquired mining rights and assets of a concession ("Concession") located in Nicaragua that was privatized by the Nicaraguan government in the 1990s. Compl. ¶¶ 27, 30. After the privatization, the Nicaraguan government allowed certain artisanal miners to continue limited mining operations in La Libertad. *Id.* ¶ 32.

Plaintiff B2Gold entered into an agreement ("Agreement") with an artisanal mining cooperative known as the Cooperativa de Producción de Pequeños Mineros de La Libertad

Chontales, R.L. ("Coopemilich"). *Id.* ¶ 35. Under the Agreement, artisanal miners agreed to relocate to different mining areas within the Concession if they were compensated and had six (6) months notice to vacate the area. *Id.* ¶ 35. The Agreement also expressly recognized that Plaintiff B2Gold retains priority rights within the Concession as provided under Nicaraguan law and that Coopemilich's power to assign areas to artisanal miners is subordinate to Plaintiff B2Gold's concession rights. *Id.* ¶ 35.

Plaintiff B2Gold owns real property located at Jackson Tunnel in the San Juan region of La Libertad. *Id.* ¶¶ 37-38. At the time of the Agreement, Defendants Guzman and Lopez, members of Coopemilich, held artisanal mining rights at the Jackson Tunnel and was bound by the Agreement. *Id.* ¶¶ 37-39. Once the Agreement was in effect, Defendants began purporting to sell possessory real property and mining interests in the Jackson Tunnel. *Id.* ¶ 40. However, Defendant Lopez only had the right to work at the Jackson Tunnel as an artisanal miner and had no possessory right to sell the real property interest, mining interest, or any other interest in the Jackson Tunnel. *Id.*

In 2014, Defendant Guzman, claiming to act with power of attorney on behalf of Defendant Lopez, his father, entered into an agreement purporting to give Defendant AURUM SA interest in Jackson Tunnel. *Id.* ¶ 41. In 2015, Defendant Guzman, again through power of attorney and on behalf of Defendant Lopez, purported to transfer partial rights of ownership in Jackson Tunnel to Defendants AURUM SA and Kauffmann. *Id.* ¶ 42.

On February 21, 2017, Plaintiff B2Gold notified Coopemilich that it intended to commercially mine an area where the Jackson Tunnel is located, which is within the region of the Agreement. *Id.* ¶ 44. In accordance with the Agreement, Plaintiff B2Gold provided Coopemilich a six (6) month notice to vacate and compensation. *Id.* ¶¶ 44, 47. All the miners that

belonged to Coopemilich, except Defendants Lopez, Guzman, AURUM SA, and Kauffmann, agreed to vacate the mining area and were compensated. *Id.* ¶¶ 47-48.

On November 13, 2017, Plaintiff B2Gold received an email with an attachment of a letter from Defendant Lopez claiming that he had extensive documentation from Coopemilich recognizing that he was the owner of the Jackson Tunnel mining operation. *Id.* ¶ 49. He warned that if the tunnel he was using for his mining operations were to collapse and cause loss of life as a result of Plaintiff B2Gold's surface operations, then a scandal would "reach the entire country." *Id.* ¶¶ 52, 53. Three days later, Defendant Lopez sent a second letter to Plaintiff B2Gold claiming the right to continue operating his subterranean mine. *Id.* ¶ 56.

On November 24, 2017, Plaintiff B2Gold sent a letter to the Nicaraguan Ministry of Energy and Mines ("Ministry") requesting that the Ministry inspect Jackson Tunnel and take all actions necessary to ensure compliance with all the mining laws. *Id.* ¶ 65. On December 6, 2017, the Ministry inspected Jackson Tunnel and requested that Defendant Lopez provide title to the property *Id.* ¶ 67. The Ministry also noted that Plaintiff B2Gold, the Concession holder, presented title to the land where Jackson Tunnel was located and two (2) drawings showing that the tunnel was located on Plaintiff B2Gold's property and within the Concession. *Id.*

On January 25, 2018, Plaintiff B2Gold petitioned to the Ministry and the Director General of Mines, that the Ministry issue a resolution confirming that Plaintiff B2Gold: has the exclusive rights to recover the mineral deposits existing in the Concession; Defendant Lopez does not have permission from Plaintiff B2Gold to carry out artisanal mining; Defendant Lopez did not abide by the Agreement's relocation and compensation provisions; and Plaintiff B2Gold is the owner of the real estate where Defendant Lopez was found, which was proven by having submitted title to the ownership of that property. *See id.* ¶ 68(a)-(n).

On February 5, 2018, the Ministry issued a resolution ("Resolution") agreeing with Plaintiff B2Gold's petition and ordering that Defendant Lopez must provide a public deed demonstrating ownership interest in the property and other documents within sixty (60) days. *Id.* ¶ 70. On February 26, 2018, Defendant Guzman, on behalf of Defendant Lopez, filed objections to the Resolution claiming absolute nullity and seeking recourse. *Id.* ¶ 71.

On March 7, 2018, the Ministry issued a second resolution that overruled Defendant Lopez's objections and reaffirmed the Resolution. *Id.* ¶ 73. Defendant Lopez ignored the Resolution and continued mining operations at Jackson Tunnel. *Id.* ¶ 74. In response to Plaintiff B2Gold's emergency request for precautionary measures and Defendant Lopez's opposition, the court in La Libertad issued an order ("Order") on March 15, 2018, enjoining Defendants Lopez and his workers from illegally entering the land owned by Plaintiff B2Gold and exploiting the land without authorization. *Id.* ¶ 76. Defendants Christopher, AURUM SA, Lopez, Guzman, and Kauffmann ignored the Order and Resolution and trespassed onto Plaintiff B2Gold's property, destroyed property on the premise, threatened Plaintiff B2Gold's employees, and continued mining operations. *Id.* ¶ 77.

**The Enterprise**

The Defendants operate, are employed by, or are associated with the Enterprise, an association-in-fact enterprise that seeks to enrich itself by defrauding and extorting individuals and entities. *Id.* ¶ 15. The Enterprise has conducted racketeering activities to unlawfully acquire money, real estate, and property rights in Nicaragua as early as 2008. *Id.* ¶ 17. In 2014, the Enterprise engaged in similar racketeering activities against other victims. *See id.* ¶ 19-20.

**Extortion**

On January 16, 2018, Defendant Christopher, using the email address popoyo128@gmail.com, sent an email to Plaintiff B2Gold's Chief Counsel indicating that he and Defendant Guzman were significant shareholders in Defendant AURUM and Defendant Christopher also accused Plaintiff B2Gold of crimes in Nicaragua. *Id.* ¶¶ 80, 84. He also stated that Plaintiff B2Gold's behavior in Nicaragua would cause the New York Stock Exchange ("NYSE") to consider delisting it. *Id.* ¶¶ 80-86. Defendant Christopher wrote that Plaintiff B2Gold should "expect a war" and "vicious social medial campaign designed to lower [Plaintiff's] share price." *Id.* ¶ 87. Defendant Christopher invited Plaintiff B2Gold to negotiate purchasing Jackson Tunnel from Defendant AURUM SA. *Id.* ¶ 88. Defendant Christopher signed the email as President of Flor de Mayo SA and as shareholder of AURUM SA. *Id.* ¶ 91. Plaintiff B2Gold did not give into Defendant Christopher's demands. *Id.* ¶ 92.

Since this initial email, Defendant Christopher, acting on behalf of all Defendants, sent over fifty (50) threatening and extortionate emails to Plaintiffs. *Id.* ¶ 94. Such emails consisted of killing or injuring Plaintiff B2Gold executives and Plaintiff Craig, sending defamatory reports to Plaintiff B2Gold's top shareholders, filing false and defamatory reports with the NYSE, and distributing false and defamatory reports about Plaintiff B2Gold to United States Circuit Court Judges and United States Senators. *Id.* ¶ 97. Attached to two (2) emails that threatened to kill or injure Plaintiff Craig were photographs of dead bodies face down in blood. *Id.* ¶ 101.

Based on Defendant Christopher's own statements and IP address associated with the emails, the emails were sent from Virginia, Florida, Kansas, Texas, Colorado, and Nicaragua. *Id.* ¶ 100.

**Wire Fraud**

On July 16, 2018, Defendant Christopher, on behalf of the Enterprise, devised a scheme to defraud individuals using a fundraiser on GoFundMe.com ("Fund") as a means to raise money to promote carrying on the affairs of the Enterprise. *Id.* ¶ 104. Defendant Christopher claimed that he was soliciting funds for Nicaraguan political refugees. *Id.* ¶¶ 107, 109. On the fundraiser page, Defendant Christopher claims that a genocide in Nicaragua was financed by and conducted by employees of a NYSE listed firm, which are believed to refer to Plaintiff B2Gold. *Id.* ¶ 110. The Fund was originally set up under Defendant Christopher's name, but it is now listed as El Chofer, an individual in Crozet, Virginia. *Id.* Based on several addresses in Crozet, Virginia, associated with Christopher, and comments on the fundraising page, El Chofer is Defendant Christopher. *Id.* ¶ 108.

As a result of Defendant Christopher's and other members of the Enterprise's fundraising efforts, individuals used interstate wires to provide funds to the Fund. *Id.* ¶ 112. Defendant Christopher used these funds to support the Enterprise and its racketeering activities. *Id.* ¶ 113. Based upon the Internet Protocol address associated with Defendant Christopher's email and a statement in an email indicating that he has "a room just across the river from DC next month," Plaintiffs believe that the Fund was created, maintained, or updated in this district. *Id.* ¶ 114.

**The Spectre Report**

In June 2018, Defendant Christopher authored a materially false, misleading, and defamatory report called the Spectre Report ("Report"). *Id.* ¶ 134. The Report states that it was prepared for AURUM SA by Spectre Associates, but the metadata indicates that Defendant Christopher is the author of the document. *Id.* ¶ 134. The Report claims that Plaintiff B2Gold was involved in a criminal conspiracy to defraud Nicaragua of "her gold wealth" and Plaintiff

Craig is a "primary co-conspirator." *Id.* ¶¶ 115, 135, 137. It also states that Plaintiff B2Gold is breaking U.S. laws, such as the Foreign Corrupt Practices Act, RICO, the Patriot Act, and the Securities and Exchange Act. *Id.* ¶ 140. Specifically, it states that Plaintiff B2Gold bribed "judges, police, government accounts, and more," underreported production from its Nicaraguan mines to the Securities and Exchange Comission ("SEC"), and doubled the costs reported to the SEC to make the mines appear less profitable. *See Id.* ¶¶ 136(a), (g), (j).

Based on Defendant Christopher's own statements, he transmitted the report using interstate wires to two (2) different investors of Plaintiff B2Gold located in Dallas, Texas, while he was present in this district. *Id.* ¶¶ 119(b), 143. Defendants agreed to disseminate and did disseminate the Report with intent to defraud Plaintiff B2Gold's shareholders and investors and extort Plaintiff B2Gold out of millions of dollars. *Id.* ¶¶ 120, 145.

On August 8, 2018, Defendant Christopher sent an email to a Plaintiff B2Gold employee stating that the Report and another document were sent to a U.S. District Court judge who would share them with "her three dear South [Florida] friends, two US [sic] Congress persons and a US [sic] Senator." *Id.* ¶ 144. This email was sent while Defendant Christopher was present in the district. *Id.*

**Harassment and Destruction of Property**

In April 2018, Defendants violated the Order and Resolution by using chainsaws and wire cutters to destroy Plaintiff B2Gold's fences and trespass on Plaintiff B2Gold's land in Nicaragua. *Id.* ¶ 129. They also harassed Plaintiff B2Gold's employees in an attempt to provoke physical confrontations. *Id.* ¶ 130. Additionally, Defendants uploaded at least two (2) videos of the harassment and property destruction to a public YouTube accounted titled "B2Gold Nica." *Id.* ¶ 131.

**Counts Alleged in the Complaint**

The Complaint alleges three (3) counts. The first count alleges racketeering in violation of 18 U.S.C. § 1962(c) against Defendant Christopher. *Id.* ¶¶ 148-156. The second count alleges a RICO conspiracy against all Defendants in violation of § 1962(d). *Id.* ¶¶ 158-166. The third count alleges defamation *per se* under Virginia law against Defendants Christopher, AURUM SA, Flor de Mayo SA, and Kauffmann. *Id.* ¶¶ 168-176.

### III.   EVALUATION OF PLAINTIFFS' COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322, n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiffs' claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must

set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### A.   Count I: Racketeering in Violation of 18 U.S.C. § 1962(c) (against Defendant Christopher)

Plaintiffs seek to recover on a racketeering claim under 18 U.S.C. § 1962(c) against Defendant Christopher. Section 1962(c) is violated where a person, associated with an enterprise, engaged in interstate or foreign commerce and conducts or participates in the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C § 1962(c). A plaintiff must plead that the defendant is (1) associated with an enterprise (2) that engages in interstate or foreign commerce and (3) he conducted or participated in the enterprise's affairs (4) through a pattern of racketeering activity (5) that caused injury to a plaintiff's business or property. *See Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985); *In Re Xe Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 597 (E.D. Va. 2009).

#### i. Enterprise

In asserting a § 1962(c) RICO claim, a plaintiff must "show an enterprise, which is defined as an ongoing organization, formal or in-formal, in which the various associates function as a continuing unit." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). An enterprise includes any individual, union, or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). The RICO enterprise must be distinct from the persons alleged to have violated RICO. *See id.* A RICO claim alleging that the defendant was both the "person" and "enterprise" will not survive. *See New Beckley Mining*

*Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163-66 (4th Cir. 1994). An association-in-fact enterprise "is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009); *see also Solomon v. Am. Web Loan*, 2019 U.S. Dist. LEXIS 48420, at *19 (E.D. Va. March 20, 2019). Here, Plaintiffs demonstrated the existence of an enterprise.

The Complaint alleges an association-in-fact enterprise that has continued to exist since 2008. Compl. ¶ 17. The Enterprise consists of a group of individuals that are not a legal entity. *Id.* ¶ 13. The common purpose of the Enterprise is to enrich the Enterprise by defrauding and extorting individuals and entities. *Id.* ¶ 15. Specifically, the Enterprise aimed to exploit and misappropriate Plaintiff B2Gold's mining interests in Nicaragua and extort payments and/or mining rights from it. Moreover, the Enterprise is distinct from Defendant Christopher, the only individual alleged to have violated the RICO statute, because it is comprised of other individuals. Therefore, the Court finds that Plaintiffs have demonstrated the existence of an Enterprise as required by the statute.

### ii. Interstate or Foreign Commerce

Plaintiffs must allege that the enterprise is engaged in interstate commerce or that the enterprise's activities affect interstate commerce. *Miller v. Dogwood Valley Citizens Ass'n, Inc.*, 2006 U.S. Dist. LEXIS 82482, at *13 (W.D. Va. Nov. 13, 2006) (referring to *United States v. Rone,* 598 F.2d 564, 573 (9th Cir. 1979) (stating that RICO requires that "the activity of the Enterprise, not each predicate act of racketeering, have an effect on interstate commerce" and that there must be "a nexus of the enterprise to interstate or foreign commerce")). The nexus between the enterprise and interstate commerce need only be minimal. *Miller*, 2006 U.S. Dist.

LEXIS 82482, at \*14 (citing to *United States v. Robertson*, 514 U.S. 669, 672 (1995)). Here, Plaintiffs demonstrated that the activity of the Enterprise has an effect on interstate commerce.

The Complaint sufficiently pleads an effect on interstate commerce. Defendant Christopher, acting on behalf of the Enterprise, traveled between the United States and Nicaragua to further the Enterprise's objectives and used interstate or foreign wires to raise money for the Enterprise via the Fund. Additionally, Defendant Christopher sent the Report to investors using interstate wires in order to threaten Plaintiff B2Gold's status on the NYSE. There is a minimal nexus between the Enterprise's activities and interstate commerce because interstate wires were used to support the Enterprise's activities. Accordingly, the undersigned finds that Plaintiffs have demonstrated that the Enterprise's activities affect interstate or foreign commerce.

### iii. Conducting or Participating in Enterprise Affairs

"[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs [under RICO,] one must participate in the operation or management of the enterprise itself." *Solomon*, 2019 U.S. Dist. LEXIS 48420, at \*31 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Thus, "participation" in a RICO enterprise requires some role in directing the enterprise's affairs. *Id.* However, the participation requirement does not limit RICO liability "to those with primary responsibility for the enterprise's affairs . . . but some part in directing the enterprise's affairs is required." *Reves*, 507 U.S. at 179. Here, the undersigned finds that Defendant Christopher conducted and participated in the Enterprise's affairs.

Defendant Christopher directed Enterprise's affairs on various occasions. For example, on behalf of the Enterprise, Defendant Christopher sent over fifty (50) threatening and extorting emails to Plaintiffs. He directly communicated with Plaintiffs in attempts to extort Plaintiffs of payment. He also created the Fund that defrauded individuals by using their money to further the

Enterprise's racketeering activities. Based on these facts, the Court finds that Defendant Christopher directly conducted and participated in the operation of the Enterprise's affairs.

### iv. Pattern of Racketeering

A pattern of racketeering requires at least two (2) acts of racketeering, at least one of which occurred less than ten (10) years after a prior act of racketeering, that are related and that pose a threat of continued criminal activity. 18 U.S.C. § 1961(5); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001). Although time periods of less than two (2) years fail to provide the requisite period of time, *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989), a plaintiff may properly allege acts of related fraud against other victims to establish a pattern of racketeering activity, *GE Inv.*, 247 F.3d at 550. Alleging two (2) predicate acts is not in itself sufficient to satisfy the pattern of racketeering requirement; rather, a plaintiff must allege that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). This relationship criterion may be satisfied by showing that the criminal acts "have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

Continuity refers "either to a closed period of repeated conduct, or to past conduct that, by its nature, projects into the future with a threat of repetition." *Id.* at 241. Closed-ended continuity may be established by a series of related predicate acts over a substantial period of time. *Id.* at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* Open-ended continuity may be established where the predicate acts demonstrate a threat of future, continued criminal conduct. *Id.* at 242-43. A "pattern" is demonstrated by "ongoing unlawful activities whose scope and persistence

pose a special threat to social well-being." *Menasco*, 886 F.2d at 684. Here, the Complaint sufficiently establishes a pattern of predicate acts of racketeering.

The Complaint alleges the requisite time period and number of acts to establish a pattern of racketeering. The Complaint alleges extortion, wire fraud, and other criminal acts by the same Enterprise against other victims in 2008, Compl. ¶¶ 17-24, and alleges similar acts against Plaintiffs that appear to have begun in January 2018 and occurred through August 2018, Compl. ¶ 153. During this time period, the Complaint alleges innumerable predicate acts—forty-six (46) indictable acts, Mem., ECF No. 24, at 12—of racketeering that Defendant Christopher committed on behalf of the Enterprise and in furtherance of the Enterprise's objectives. These include felony violations of Virginia, Kansas, Illinois, Colorado, Texas, and Florida statutes criminalizing extortionate acts and threats. Other predicate acts include wire fraud in violation of 18 U.S.C. § 1343, attempted extortion and conspiracy to commit extortion in violation of 18 U.S.C. § 1951, and interstate and foreign travel in support of racketeering activities in violation of 18 U.S.C. § 1952(a)(3). Compl. ¶¶ 151, 153.

The Complaint also alleges that these predicate acts were related. The purpose of committing these acts was to extort, threaten, intimidate, and defraud Plaintiffs of property and money. They were not isolated events. Defendant Christopher continued to threaten and extort Plaintiffs and other victims over a substantial period of time and they also threatened future criminal conduct, such as threats to kill Plaintiff Craig. This demonstrates close-ended continuity. Indeed, the ongoing unlawful activity posed a threat to Plaintiffs' social well-being. Therefore, the undersigned finds Plaintiffs established a pattern of racketeering activities.

### v. Injury

A private RICO plaintiff only has standing to bring suit if he can show damage to "business or property" proximately caused by the defendant's RICO violation. *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001) (citing 18 U.S.C. § 1964(c)). The proximate cause standard requires some direct relation between the injury asserted and the injurious conduct alleged and excludes those links that are too remote, purely contingent, or indirect. *D'Addario v. D'Addario*, 901 F.3d 80, 96 (2d Cir. 2018); *see also Hecht v. Commerce Clearing House. Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) ("Injury in the form of lost business commissions . . . is too speculative to confer standing, because Hecht only alleges that he would have lost commissions in the future, and not that he has lost any yet."); *see also Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (holding that, for RICO standing, the plaintiff must prove a "concrete financial loss," an actual loss "of their own money," and "not mere 'injury to a valuable intangible property interest'").

Additionally, a private RICO plaintiff must allege and prove a domestic injury to its business or property. *RJR Nabisco, Inc. v. European Cmty.,* 136 S. Ct. 2090, 2106 (2016). The Court of Appeals for the Second, Third, and Seventh Circuits are the only federal appellate courts that have grappled with *RJR Nabisco's* domestic injury instruction. The Second and Seventh Circuits ruled that the focus of the domestic injury analysis should be the location of the alleged tangible injuries. *Bascuñán v. Elsaca*, 874 F.3d 809, 824-25 (2d Cir. 2017); *Armada (Sing.) PTE, Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094-5 (7th Cir. 2018) (holding that a party experiences or sustains injuries to its intangible property at its residence). The Third Circuit established that if a defendant's conduct affects tangible property, the location of the property is the place of the injury. *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 703-04 (3d. Cir. 2018)

(adding that "injuries to intangible property [are] trace[d] to the location of the effects of the alleged injurious conduct."). As there is no clear precedent in the 'domestic injury' debate, this Court concludes the relevant inquiry is where the plaintiff's injury occurred, *i.e.*, where the impact of the plaintiff's injury was felt.

Plaintiffs argue that their RICO injuries are the travel expenses, court costs, and attorney's fees incurred by obtaining a protective order for Plaintiff Craig in Virginia state court as a result of Defendant Christopher's extortionate threats. Plaintiffs cite to *Stochastic Decisions, Inc. v. DiDomenico* to argue that legal fees may constitute RICO injuries when they are proximately caused by a RICO violation. Mem., ECF No. 24 at 16; 995 F.2d 1158, 1167 (2d Cir. 1993), *cert denied*, 510 U.S. 945, (1993). But for Defendant Christopher's threats, Plaintiffs contend they would have never needed or sought a protective order. Mem., ECF No. 24 at 17. They also argue that Plaintiff B2Gold's "business" in the United States and its listing on the NYSE was harmed because of the dissemination of the Report. *Id.* Plaintiffs' argument is misguided.

Plaintiffs are incorrect in arguing that the travel fees, court costs, and legal fees incurred to obtain a protective order qualify as a RICO injury. The RICO statute does not contemplate an injury in the form of legal fees and costs. Plaintiffs' citation to *Stochastic* to supplement their argument is meritless because that case holds that legal fees may constitute as RICO <u>damages</u>, not as a RICO injury. Plaintiffs conflate injury and damages under the RICO statute. Also, case law, albeit persuasive authority, provides that legal fees and costs that a plaintiff chose to incur are an indirect injury from a defendant's conduct. *See Strates Shows v. Amusement of Am.*, 379 F. Supp. 2d. 817, 833 (E.D.N.C. 2005). *Strates* held that a plaintiff who chooses to incur legal fees to mitigate a defendant's conduct, where it is not automatically incurred, cannot recover

under the RICO statute. 379 F. Supp. 2d. at 833. Here, similar to *Strates*, Plaintiff Craig chose to incur travel expenses, court costs, and legal fees. They were not automatically incurred. Plaintiff Craig voluntarily chose to mitigate the effects of Defendant Christopher's conduct. This is an indirect injury.

Regarding Plaintiffs' argument that B2Gold's business was damaged, the Court finds this argument meritless. Plaintiffs have not shown how Plaintiff B2Gold's business was damaged. Plaintiffs merely stated that Plaintiff B2Gold's "business" in the United States and its listing on the NYSE was harmed because of the dissemination of the Report. Memo., ECF No. 24 at 17. This is not a concrete injury.[2] Rather, Defendant Christopher's defamatory actions had an undetermined economic effect on Plaintiffs' business due to stock devaluation, making any claim for damages speculative. *See generally Steele*, 36 F.3d at 70. There is no allegation that its listing on the NYSE was in fact effected by the Report, a stock devaluation, or that some shareholders or investors refused to do business with Plaintiff B2Gold as a result of the Report.

Moreover, the Court finds it worth mentioning that the only RICO injury Plaintiff B2Gold suffered was the property damage that occurred on its property in Nicaragua. However, this is not a domestic injury. Therefore, Plaintiffs have not suffered a RICO injury. The undersigned finds that Plaintiffs failed to sufficiently prove Count I, Racketeering in Violation of 18 U.S.C § 1962(c).

**B.    Count II: Conspiracy to Violate 18 U.S.C. § 1962(d) (against Defendants Christopher, Flor de Mayo, and Kauffman ("Remaining Defendants"))**

To prove a RICO conspiracy under § 1962(d), a plaintiff must show that the defendant conspired to violate § 1962(c). 18 U.S.C. § 1962(d). The plaintiff must allege that "(1) two or

---

[2] Although a defendant admits to the factual allegations upon default, they do not admit to legal conclusions by failing to answer the complaint. Plaintiffs' statement is a legal conclusion rather than a fact, therefore, Defendant Christopher has not admitted to this.

more people agreed to commit a substantive RICO offense" and (2) "that the defendant knew of and agreed to the overall objective of the RICO offense." *Aggarwal v. Sikka*, 2012 U.S. Dist. LEXIS 199038, at *14 (E.D. Va. June 12, 2012). The plaintiff need not allege that each defendant committed or agreed to commit predicate acts, but must allege that each defendant agreed to facilitate the unlawful activity. *Id.* (citing to *U.S. v. Salinas*, 522 U.S. 52, 61-66 (1997)). "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas*, 522 U.S. at 65. A defendant may be a conspirator by the mere agreement to facilitate only some of the acts leading to the substantive offense. *Id.*

Here, Plaintiffs have proved that the Remaining Defendants conspired to commit RICO violations under § 1962(d). The conspiracy consists of more than two (2) people that agreed to commit substantive RICO offenses. Defendants Christopher, Flor de Mayo SA, and Kauffman agreed to threaten Plaintiffs for the purpose of extorting money and property from them. Evidence of an agreement between these three (3) individuals is clear from the emails that Defendant Christopher sent to Plaintiffs. Defendant Christopher stated that he was working with a team of confederates, which included Defendant Kauffman, he signed extortionate emails on behalf of Defendant Flor de Mayo SA as President of the company, and he copied Defendant Kauffman to the extortionate emails that were sent to Plaintiffs. Mem., ECF No. 24 at 18-19. These Defendants agreed to facilitate RICO offenses. Moreover, the Remaining Defendants knew of and agreed to the overall objective of the RICO offense because they were privy to the extortionate emails. By being a party to the emails, they knew that the RICO offenses, such as extortion and wire fraud, were the main objective of the Enterprise and adopted the goal of

furthering these criminal endeavors. Accordingly, the undersigned finds that Defendants Christopher, Flor de Mayo SA, and Kauffman conspired to commit a RICO violation under § 1962(d).

**C.     Count III: Defamation *Per Se* (against Remaining Defendants)**

The elements of defamation are (1) publication of (2) an actionable statement with (3) the requisite intent. *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (citing *Jordan v. Kollman*, 269 Va. 569, 575 (2005)). The first prong—publication element—requires dissemination of the statement to a third party in a nonprivileged context. *McCray v. Infused Sols.*, 2017 U.S. Dist. LEXIS 150418, at *8 (E.D. Va. Sept. 15, 2017) (citing to *Shaheen v. WellPoint Companies, Inc.,* 490 Fed. App'x 552, 555 (4th Cir. 2012)). The second element requires that the statement be both false and defamatory to be actionable. *Tharpe,* 285 Va. at 480. Statements that express only the speaker's opinion and not matters of fact are not actionable because such statements cannot be shown to be false. *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 40 (2006). If a statement is actionable, then it may constitute defamation *per se* if it: (1) imputes the commission of a criminal offense involving moral turpitude for which a party may be convicted; (2) imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties; or (3) prejudices the party in her profession or trade. *Yeagle v. Collegiate Times*, 255 Va. 293, 297 n.2 (1998).  Defamatory statements must be more than merely unpleasant or offensive; rather, they must make the plaintiff appear odious, infamous, or ridiculous. *McCray,* 2017 U.S. Dist. LEXIS 150418, at *9. "Corporations, as well as individuals, can be defamed *per se* by statements that cast aspersions on the target's 'honesty, credit, efficiency or its prestige or standing in its field of business.'" *JTH Tax, Inc. v. Grabert*, 8 F.Supp. 3d 731, 741 (E.D. Va. 2014).

For the final element, the requisite intent a plaintiff must prove is actual malice if punitive damages are sought. *Jordan*, 269 Va. at 576. Actual malice is defined under Virginia law to include "a statement made with 'knowledge that it was false or with reckless disregard of whether or not it was false.'" *Newspaper Publishing Corp. v. Burke*, 216 Va. 800, 805 (1976) (citing to *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). In assessing the facts of the Complaint, the undersigned finds a sufficient defamation *per se* claim against the Remaining Defendants.

The first element of the defamation claim is met because the Report was disseminated to third parties—two (2) B2Gold investors in Texas and a United States District Court judge—and there is no allegation that the Report was published in a privileged manner. With regard to the second element, the claim is actionable because the statements are both false and defamatory. The false and defamatory statements include false assertions that Plaintiff B2Gold bribed "judges, police, government accounts, and more," underreported production from its Nicaraguan mines to the SEC, and doubled the costs reported to the SEC to make the mines appear less profitable. *See* Compl. ¶¶ 136(a), (g), (j). The Report also contains assertions against Plaintiff Craig by alleging that he is a "primary co-conspirator" of Plaintiff B2Gold's conspiracy to defraud Nicaragua of "her gold." Compl. ¶¶ 135, 137. These statements constitute defamation *per se* because they impute the commission of a crime involving moral turpitude in which either Plaintiff could be convicted of a crime. Specifically, the Report contains statements that could cause Plaintiffs to be convicted of bribery, fraud, and false reporting. The Report also imputes a lack of integrity in Plaintiff B2Gold's ability to perform its corporate duties and imputes that Plaintiff Craig is unfit to perform his duties as Vice President of Operations at B2Gold Corp. These statements are not opinion; they are matters of fact because they can be shown to be false.

*See Gov't Micro Res., Inc.*, 271 Va. at 40. They are also more than merely unpleasant or offensive. They allege that Plaintiffs committed serious crimes of bribery, perjury, and fraud, which reflect an odious character on Plaintiffs. Accordingly, this claim is actionable.

Finally, Plaintiffs have properly pleaded the requisite intent of actual malice. The Remaining Defendants made the statements with reckless disregard of whether or not they were false because they were trying to extort Plaintiffs, harm their reputations, and attempt to defraud them. Thus, the undersigned finds that Plaintiffs have properly shown defamation *per se* against the Remaining Defendants.

## IV.   REQUESTED RELIEF

In a default case, the plaintiff's factual allegations are accepted as true for all purposes except in determining damages. To support a claim for damages, a plaintiff must provide an appropriate basis for the Court to determine whether it is entitled to the relief sought. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Furthermore, in default cases in this district, "there can be no recovery over the amount pled in the complaint." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 1:04-cv-1109, 2005 WL 1432786, at *8 (E.D. Va. June 1, 2005); *see also Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *9 (E.D. Va. Dec. 17, 2009). However, "[t]he exact amounts for interest, costs, and attorney's fees need not be pled specifically in the complaint." *Sheet Metal Workers' Nat'l Pension Fund*, 2005 WL 1432786, at *9.

### A.   Compensatory and Actual Damages

Plaintiffs seek compensatory damages pursuant to 18 U.S.C. § 1964(c) for damages actually sustained and "threefold the actual damages sustained" for the RICO counts, Compl. ¶ ¶

176(A)-(B), which is permitted by § 1964(c). *See* 18 U.S.C § 1964. Per the Court's request, Plaintiffs filed a supplemental brief and seek $469,691 in actual damages. Plf. Supp. Damages Submission Pursuant to Ct. Request, ECF No. 28. Plaintiffs cite to *Stochastic Decisions, Inc.* to argue that the legal fees and costs incurred to obtain a protective order for Plaintiff Craig against Defendant Christopher are compensatory and actual damages that may be awarded. 995 F.2d at 1167. The undersigned is not persuaded by this argument because not only it is a Second Circuit case that is not binding in this Circuit, but also Plaintiffs argued factual causation rather than proximate causation. *See* Mem., ECF No. 24, at 17 ("But for Defendant Christopher's increasingly violent and extortionate threats on behalf of the Enterprise, Plaintiffs would have never needed nor sought a protective order . . . .). Plaintiffs have not shown how the legal fees and costs incurred to obtain a protective order were reasonably foreseeable; the decision to obtain a protective order was voluntary.

Additionally, even if such legal fees constitute compensatory and actual damages, this would only be applied to Plaintiff Craig because he incurred these fees. Plaintiff B2Gold has yet to provide this Court with an amount sought in compensatory and actual damages. For these reasons, the undersigned declines to recommend an award of compensatory and actual damages for Plaintiffs.

Regarding the defamation claim, Plaintiffs seek damages proximately caused by Defendants' defamation in an amount exceeding $75,000. *Id.* ¶ 176(C). Once a plaintiff proves defamation *per se*, "Virginia law presumes that the plaintiff suffered actual damage to its reputation and, therefore, [the plaintiff] does not have to present proof of such damages." *JTH Tax, Inc.*, 8 F. Supp. 3d at 741 (quoting *Fleming v. Moore*, 221 Va. 884, 889 (1981)). Since proof

of actual damages suffered is not required, the Court finds an award of $75,000 reasonable and appropriate based on the facts of the case.

**B.      Punitive Damages**

Plaintiffs also seek punitive damages for its defamation claim in the amount of $350,000 or the maximum available by law. Compl. ¶ 176 (D). As previously stated, a plaintiff must show actual malice through clear and convincing proof to recover punitive damages. *Jordan*, 269 Va. at 577 (citing to *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974)). The undersigned finds that punitive damages are appropriate because Plaintiffs sufficiently demonstrated that Defendants Christopher, Flor de Mayo SA, and Kauffman made the defamatory statements with actual malice. Plaintiffs are entitled to punitive damages in the amount of $350,000, the maximum allowed under VA. ANN. CODE § 8.01-38.1.

**C.      Reasonable Attorney's Fees and Costs**

Section 1964(c) provides for the recovery of attorney's fees and costs related to the RICO case. 18 U.S.C. § 1964. The Court finds that Plaintiffs are entitled to attorney's fees for this case and shall file a motion within fourteen (14) days after entry of judgment. Fed. R. Civ. P. 54(d)(2).

**D.      Injunctive Relief**

Indisputably, "an injunction is an extraordinary remedy," *Unit Owners Ass'n v. Gillman*, 223 Va. 752, 770 (1982), and it is not generally issued to restrain torts, such as defamation, against a person, *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967). Prior restraints are principally disfavored and bear a heavy presumption against validity because "a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). Thus, "to secure an injunction, a party must show irreparable harm and the lack of an

adequate remedy at law." *Black & White Cars v. Groome Transp., Inc.*, 247 Va. 426, 431 (1994). An injunction "must be specific in its terms, and it must define the exact extent of its operation so that there may be compliance." *Gillman*, 223 Va. at 770. The injunction should set forth what is enjoined in a clear and certain manner and its meaning should not be left for speculation or conjecture. *Id.* Here, Plaintiffs request injunctive relief for its RICO claims and defamation claim. The Court will first address whether Plaintiffs are entitled to an injunction for the defamation claim.

Plaintiffs argue that an injunction is appropriate for its defamation claim because there is irreparable harm from the dissemination of the Report, there is no adequate remedy at law that would deter Defendant Christopher from continuing to distribute the Report, and it will not be a prior restraint because the injunction would be narrowly tailored to the defamatory claims in paragraphs 136 through 138 and 140 through 142 of the Complaint. Mem., ECF No. 24 at 28. The undersigned agrees.

Under the defamation *per se* claim, a plaintiff is not required to prove damages because it is assumed that plaintiff suffered actual damages to its reputation. *See JTH Tax, Inc.*. 8 F. Supp. 3d at 741. As Plaintiffs have proven a defamation *per se* claim, the Court finds that irreparable harm has been met. Plaintiffs suffered irreparable harm to their reputation because false and defamatory statements in the Report accused them of criminal offenses and it was disseminated to third parties.

Additionally, monetary damages awarded in this case would be inadequate because the injury would be continuous as Plaintiffs do not know who or how many people received a copy of the Report. Mem., ECF. No. 24 at 27; *see Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*, 87 F. Supp. 2d 567, 587 (E.D. Va. 2000) (stating that monetary damages are

typically regarded as inadequate where the injury is continuous or repeated); *see also Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006) (stating that permanent injunction is appropriate when future violations are a "continuing threat"). Therefore, without an injunction, Defendant Christopher could continue disseminating the Report and Plaintiffs would be forced to return to Court every time they become aware that the Report has been distributed. The Court also agrees that such a narrowly tailored injunction—prohibiting Defendant Christopher from repeating the statements in paragraphs 136 through 138 and 140 through 142 of the Complaint—would be an appropriate prior restraint because Defendant Christopher's freedom of speech would only be chilled with regard to specific statements in the Complaint. Absent a prior restraint, Defendant Christopher would continue to make the same defamatory allegations. Therefore, the Court finds that injunctive relief is appropriate for Plaintiffs defamation claim. The Court now addresses whether an injunction is appropriate for Count 2: Conspiracy in Violation of 18 U.S.C. § 1962(d).

Plaintiffs acknowledge that neither this Circuit, nor, the United States Supreme Court has decided whether injunctive relief is available to private plaintiffs under RICO. Plaintiffs, therefore, cite to a Second Circuit case that held RICO private plaintiffs are entitled to injunctive relief. Mem., ECF No. 24 at 26 (citing to *Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016). Yet, this Court declines to follow the Second Circuit and instead refers to the language of the statute.

Injunctive relief is not appropriate for a RICO offense because § 1964(c) makes no mention of injunctive relief. This Circuit has previously stated that "there is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief." *See Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir. 1983). This doubt is highlighted by the fact that

Congress has declined to authorize injunctive remedies for private parties. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 155 (1987) (noting that Congress failed to enact a bill that would have permitted private actions for injunctive relief under RICO). When a statute expressly provides a specific set of remedies, the Supreme Court has cautioned that courts must "be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Although the Fourth Circuit has yet to expressly address this issue, dictum indicates that the Fourth Circuit and its district courts align themselves with the Ninth Circuit's ruling in *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986), which holds that injunctive relief is not available to a private party in a civil RICO action. *See Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 726 (4th Cir. 1999); *Galaxy Distrib. of W. Va., Inc. v. Std. Distrib., Inc.*, 2015 U.S. Dist. LEXIS 92491, at *12 (S.D. W.V. July 16, 2015); *Minter v. Wells Fargo Bank, N.A.*, 593 F.Supp. 2d 788, 795 (D. Md. 2009) (referring to the Ninth Circuit's holding as "more well-reasoned and convincing . . . ."); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 119 F.Supp. 2d 546, 551 (D. Md. 2000) (refraining to provide equitable relief under RICO), *aff'd in part, rev'd in part on other grounds, and remanded by* 262 F.3d 260 (4th Cir. 2001). Therefore, in keeping with the reasoning seemingly adopted by this Circuit, and refraining from reading a remedy into the RICO statute, the undersigned finds that injunctive relief is not permitted for Plaintiffs' RICO claim.

## V.    RECOMMENDATION

The undersigned recommends that Plaintiffs' Motion for Default Judgment be **GRANTED in part and DENIED in part**. Plaintiffs' Motion for default judgment is granted as to Counts II and III against Defendants Christopher, Flor de Mayo SA, and Kauffman. The Motion is denied as to default judgment for Count I because Plaintiffs failed to demonstrate a

RICO injury. Default judgment is also denied against Defendants Lopez, Guzman, and AURUM SA as the Court does not have personal jurisdiction over them.

The undersigned recommends that an exact amount for default judgment for Count II not be entered at this time because the Court was not persuaded by Plaintiff Craig's argument that legal fees and costs constitute RICO damages. Additionally, Plaintiff B2Gold has not provided this Court with proof of damages resulting from Defendants Christopher's, Flor de Mayo SA's, and Kauffman's RICO offense.  For Count III, the undersigned recommends entry of default judgment against Defendants Christopher, Flor de Mayo SA, and Kauffman in the amount of $75,000 for damages, $350,000 for punitive damages, and injunctive relief. Upon submission of attorney affidavits, Plaintiffs are also entitled to attorney's fees.

## VI.   <u>NOTICE</u>

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendants at the following addresses:

**Philip Bryson Christopher**
6197 Railroad Ave.
Crozet, VA 22932

**Edwin Alfredo Kauffman Kauffman**
Carretera Sur, Reparto San Patricio
casa No. 94
Managua, Republica de Nicaragua

**AURUM S.A.**
Carretera Sur, Reparto San Patricio
casa No. 94
Managua, Republica de Nicaragua

**Flor de Mayo S.A.**
Hotel Finca Popoyo
Salinas de Nahualapa
Departamento de Rivas, Republica
de Nicaragua

**Eduardo Ruben Gonzalez Lopez**
Contiguo a la casa curial de la Iglesia Católica
La Libertad, Departamento de Chontales, Republica de Nicaragua

**Eduardo Ruben Gonzalez Guzman**
Contiguo a la casa curial de la Iglesia Católica
La Libertad, Departamento de Chontales, Republica de Nicaragua

/s/

Ivan D. Davis
United States Magistrate Judge

July 10, 2019
Alexandria, Virginia